1   Victor A. Sahn (CA Bar No. 97299)
   vsahn@sulmeyerlaw.com
2   Daniel A. Lev (CA Bar No. 129622)
   dlev@sulmeyerlaw.com
3   David J. Richardson (CA Bar No. 168592)
   drichardson@sulmeyerlaw.com
4   Asa S. Hami (CA Bar No. 210728)
   ahami@sulmeyerlaw.com
5   **Sulmeyer**Kupetz
  A Professional Corporation
6   333 South Hope Street, Thirty-Fifth Floor
  Los Angeles, California  90071-1406
7   Telephone: 213.626.2311
  Facsimile: 213.629.4520

8

  Attorneys for Plaintiff
9   Official Committee of Unsecured Creditors

10   **UNITED STATES BANKRUPTCY COURT**

11   **CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION**

| | |
|---|---|
| 12   In re | Case No. 2:13-bk-14135-RK |
| 13   ART AND ARCHITECTURE BOOKS OF THE 21st CENTURY, a California | Chapter 11 |
| 14   corporation, | |
| 15            Debtor. | |
| 16   ──────────────────── | Adversary No. 2:15-ap-01103-RK |
| 17   THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE BANKRUPTCY ESTATE OF ART AND | |
| 18   ARCHITECTURE BOOKS OF THE 21st CENTURY, | **OPPOSITION OF PLAINTIFF TO "MOTION BY DEFENDANT BEN JEWELRY, INC. TO DISMISS COMPLAINT FILED BY THE OFFICIAL** |
| 19            Plaintiff, | **COMMITTEE OF UNSECURED CREDITORS PURSUANT TO FRCivP** |
| 20       vs. | **RULE 12(b)"** |
| 21   BEN JEWELRY, INC., a California | |
| 22   corporation, dba SOUTH BEVERLY-WILSHIRE JEWELRY & LOAN, and dba | Date:    April 28, 2015 |
| 23   THE DINA COLLECTION, | Time:   3:00 p.m.<br>Place:  Courtroom 1675 |
| 24            Defendant. |         255 East Temple Street<br>        Los Angeles, CA 90012 |
| 25   ──────────────────── | |

26

27

28

ASH\ 2445122.1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................1

II.   THE MOTION SHOULD BE DENIED ..............................................................1

    A.    Standard on Motion to Dismiss ...............................................................1

    B.    The Complaint States Viable Claims For Relief .....................................2

        1.    The Complaint States a Claim for Relief Under California Civil Code Section 3439.04(a)(1) (First Claim for Relief) ....................................2

            a.    Neither the Complaint Nor the Accompanying Exhibit Establishes Defendant's Compliance With the California Pawnbrokers Act ...................................................................3

            b.    California's Pawnbroker Regulations do Not Shield Defendant From the Bankruptcy Code's Avoidance Powers ............4

            c.    The Complaint Alleges Sufficient Facts to Support a Claim for Avoidance of a Fraudulent Transfer With Actual Intent to Defraud ...............................................................................7

        2.    The Complaint States a Claim for Relief Under California Civil Code Section 3439.04(a)(2) (Second Claim for Relief) ............................8

        3.    The Complaint States a Claim for Relief Under California Civil Code Section 3439.05 (Third Claim for Relief) .......................................10

        4.    The Complaint States a Claim for Relief Under Bankruptcy Code Section 548(a)(1)(A) (Fourth Claim for Relief) ..........................................10

        5.    The Complaint States a Claim for Relief Under Bankruptcy Code Section 548(a)(1)(B) (Fifth Claim for Relief) ......................................11

        6.    The Complaint States a Claim for Relief Under Bankruptcy Code Section 547 (Sixth Claim for Relief) ...............................................11

        7.    The Complaint States a Claim for Relief Under Bankruptcy Code Section 550 (Seventh Claim for Relief) ..........................................12

        8.    The Complaint States a Claim for Relief Under Bankruptcy Code Section 506(d) (Eighth Claim for Relief) ........................................13

        9.    The Complaint States a Claim for Relief Under Bankruptcy Code Section 551 (Ninth Claim for Relief) ..............................................13

        10.   The Complaint States a Claim for Relief Under Bankruptcy Code Section 542(a) (Tenth Claim for Relief) .........................................14

        11.   The Complaint States a Claim for Relief Under Bankruptcy Code Section 542(b) (Eleventh Claim for Relief) ....................................16

        12.   The Complaint States a Claim for Relief for Disallowance of Defendant's Claim (Twelfth Claim for Relief) ...........................................16

|   |   | 13. | The Complaint States a Claim for Relief for Declaratory Relief (Thirteenth Claim for Relief) | 17 |

13.    The Complaint States a Claim for Relief for Declaratory Relief (Thirteenth Claim for Relief) ......................................................17

C.      Plaintiff has Standing to Prosecute This Action .......................................17

III.    PLAINTIFF SHOULD BE PERMITTED TO AMEND THE COMPLAINT IF THE COURT FINDS THAT ANY CLAIM FOR RELIEF IS NOT ADEQUATELY PLEADED ..............................................................................18

IV.    CONCLUSION .........................................................................................19

# **TABLE OF AUTHORITIES**

**Page**

## **CASES**

*Abele v. Modern Financial Plans Services, Inc. (In re Cohen),*
  300 F.3d 1097 (9th Cir. 2002)..................................................................... 7

*Amfac Mortg. Corp. v. Arizona Mall of Tempe, Inc.,*
  583 F.2d 426 (9th Cir. 1978)...................................................................... 2

*APJL Consulting, LLC v. Treasures, Inc. (In re Treasures, Inc.),*
  2015 Bankr. LEXIS 662 (B.A.P. 9th Cir. Mar. 3, 2015) ..................... 15

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................................ 2

*BC Liquidating, LLC v. Sharf (In re BC Funding, LLC),*
  2014 Bankr. LEXIS 4880 .......................................................................... 12

*Bell v. Instant Care Title Loans (In re Bell),*
  279 B.R. 890 (Bankr. N.D. Ga. 2002)...................................................... 9

*Carter v. H & B Jewelry and Loan (In re Carter),*
  209 B.R. 732 (Bankr. D. Oregon 1997) ............................................... 5, 9

*Dewhirst v. Citibank (Arizona) (In re Contractors Equipment Supply Co.),*
  861 F.2d 241 (9th Cir. 1988)..................................................................... 15

*Dickinson v. Meredith (In re Wathen's Elevators, Inc.),*
  37 B.R. 871 (Bankr. W.D. Ky. 1984)........................................................ 12

*Erickson v. Pardus,*
  551 U.S. 89 (2007) ................................................................................... 2

*Filip v. Bucurenciu,*
  129 Cal. App. 4th 825 (2005)..................................................................... 7

*Geddes v. Mayhall Enterprises, LLC (In re Jones),*
  304 B.R. 462 (Bankr. N.D. Ala. 2003)................................................. 5, 9

*In re Gulino,*
  779 F.2d 546 (9th Cir. 1985)..................................................................... 12

*Jacobson v. Schwarzenegger,*
  357 F. Supp. 2d 1198 (C.D. Cal. 2004).................................................... 2

*Joseph v. Frank (In re Troll Communications, LLC)*
  385 B.R. 110 (Bankr. D. Del. 2008) ........................................................ 2

*McColley v. Rosenberg (In re Candor Diamond Corp.),*
  76 B.R. 342 (Bankr. S.DN.Y. 1987) ........................................................ 6

*Mwangi v. Wells Fargo Bank, N.A. (In re Mwangi),*
    432 B.R. 812 (B.A.P. 9th Cir. 2010) ................................................................ 15

*Neilsen v. Union Bank of California, N.A.,*
    290 F. Supp. 2d 1101 (C.D. Cal. 2003) ............................................................ 11

*Parks School  of Business, Inc. v. Symington,*
    51 F.3d 1480 (9th Cir. 1995) ............................................................................ 2

*Siegfried v. Board (In re Seigfried),*
    2014 Bankr. LEXIS 5092 (Bankr. D.N.M. Dec. 19, 2014) ............................... 15

*Still v. Arakelyan (In re Still),*
    393 B.R. 896 (Bankr. C.D. Cal. 2008) .............................................................. 7

*Texaco, Inc. v. Ponsoldt,*
    939 F.2d 794 (9th Cir. 1991) ............................................................................ 18

*Travelers Casualty & Surety Company of America v. Pacific Gas and Electric Company,*
    549 U.S. 443 (2007) ................................................................................... 6, 17

*United States v. 5208 Los Franciscos Way,*
    385 F.3d 1187 (9th Cir. 2004) .......................................................................... 7

*United States v. Webb,*
    655 F.2d 977 (9th Cir. 1981) ............................................................................ 18

*United States v. Whiting Pools, Inc.,*
    462 U.S. 198 (1983) ......................................................................................... 15

*Zenith Radio Corp. v. Hazeltine Research, Inc.,*
    401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971) ........................................ 18

**<u>STATUTES</u>**

11 U.S.C.
    § 502(b) ........................................................................................................... 17

11 U.S.C.
    § 502(d) ............................................................................................... 6, 16, 17

11 U.S.C.
    § 541 ............................................................................................................... 14

11 U.S.C.
    § 542 ............................................................................................................... 15

11 U.S.C.
    § 542(a) ..................................................................................................... 14, 15

11 U.S.C.
    § 542(b) ........................................................................................................... 16

11 U.S.C.
§ 544 ................................................................................................................ 6

11 U.S.C.
§ 547 ............................................................................................................ 6, 11

11 U.S.C.
§ 548 ................................................................................................................ 6

11 U.S.C.
§ 548(a)(1)(A) ................................................................................................ 10

11 U.S.C.
§ 548(a)(1)(B) ................................................................................................ 11

11 U.S.C.
§ 550 .............................................................................................................. 12

11 U.S.C.
§ 550(b) ........................................................................................................... 6

11 U.S.C.
§ 551 .............................................................................................................. 14

Cal. Civ. C.
§ 3439 .............................................................................................................. 5

Cal. Civ. C.
§ 3439.04 ......................................................................................................... 7

Cal. Civ. C.
§ 3439.04(a) ..................................................................................................... 7

Cal. Civ. C.
§ 3439.04(a)(1) .................................................................................... 2, 7, 8, 10

Cal. Civ. C.
§ 3439.04(a)(2) ........................................................................................... 8, 10

Cal. Civ. C.
§ 3439.04(b) ..................................................................................................... 7

Cal. Civ. C.
§ 3439.05 ....................................................................................................... 10

**OTHER AUTHORITIES**

Cal. Bus. & Prof. Code
§ 21628 ................................................................................................. 2, 3, 5, 6

Cal. Bus. & Prof. Code
§ 21628(e) ....................................................................................................... 4

Cal. Bus. & Prof. Code
   § 21628(h)(1)................................................................................... 3, 5

Cal. Bus. & Prof. Code
   § 21628(b) ........................................................................................ 3

Cal. Bus. & Prof. Code
   § 21628(f) ......................................................................................... 4

Cal. Bus. & Prof. Code
   § 21628(g) ........................................................................................ 4

## **RULES**

Fed. R. Bankr. P.
   Rule 7015(a)(2) ............................................................................. 18

Fed. R. Civ. P.
   Rule 8(a) .......................................................................................... 2

Fed. R. Civ. P.
   Rule 12(b)(6) ................................................................................... 2

1    The Official Committee of Unsecured Creditors of the Bankruptcy Estate of Art and

2    Architecture Books of the 21st Century, plaintiff in the above-captioned action ("Plaintiff"),

3    hereby submits its opposition to the "Motion by Defendant Ben Jewelry, Inc. to Dismiss

4    Complaint Filed by the Official Committee of Unsecured Creditors Pursuant to FRCivP Rule

5    12(b)" (the "Motion"), filed by Ben Jewelry, Inc., defendant in the action ("Defendant").

6    **I.**

7    **INTRODUCTION**

8    The Motion is premised on the false predicate that pawnbroker transactions are completely

9    immune from any form of avoidance liability as a matter of law.  Defendant cites no authority for

10    such a sweeping proposition.  There is none.  The Motion should be denied.

11    Plaintiff's complaint (the "Complaint") contains the requisite factual allegations to support

12    all asserted claims for relief.  Both those allegations, as well as the exhibit to the Complaint,

13    confirm two loans that Defendant made to Douglas Chrismas alone (not the debtor) in exchange

14    for the transfer by the debtor (not Chrismas) of its own artwork and funds to secure and pay down

15    those loans – a classic fraudulent transfer involving the transfer of the debtor's corporate assets for

16    the exclusive benefit of its principal.[1]  The mere fact that the loans may have complied with the

17    requirements of California's Pawnbrokers Act – a contention ***not*** supported by the Complaint or

18    its exhibit – does not insulate Defendant from the estate's avoidance powers.

19    The fact remains that Defendant was the initial transferee in a fraudulent or other avoidable

20    transaction, subject to strict liability.  With more than sufficient allegations to state claims for

21    relief, the Complaint is well-pleaded and should not be dismissed.

22    **II.**

23    **THE MOTION SHOULD BE DENIED**

24    **A.    Standard on Motion to Dismiss**

25    A motion to dismiss does "not resolve disputed facts or decide the merits of the case," but

---

[1] In the alternative, the Complaint alleges preference claims in the event the Loan ultimately is determined
to have been made to the debtor.

ASH\ 2445122.1

1  only "test[s] the sufficiency of a complaint." *Joseph v. Frank (In re Troll Communications, LLC)*,

2  385 B.R. 110,116 (Bankr. D. Del. 2008) (citations omitted).  A complaint "does not require

3  'detailed factual allegations;'" rather, the Court need only determine whether the complaint

4  contains sufficient factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft*

5  *v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  "A claim has facial plausibility when the

6  plaintiff pleads factual content that allows the court to draw the reasonable inference that the

7  defendant is liable for the misconduct alleged." *Id.*

8      "Specific facts are not necessary" in a complaint; the "short and plain statement" required

9  under Rule 8(a) of the Federal Rules of Civil Procedure "need only give the defendant 'fair notice

10  of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89,

11  93 (2007) (citations omitted).  Furthermore, on a motion to dismiss under Rule 12(b)(6), "any

12  doubts are resolved in favor of the pleader." *Amfac Mortg. Corp. v. Arizona Mall of Tempe, Inc.*,

13  583 F.2d 426, 430 (9th Cir. 1978).

14      In adjudicating a motion to dismiss under Rule 12(b)(6), a court must "take all allegations

15  of material fact as true and construe them in the light most favorable to the nonmoving party."

16  *Parks School  of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  In addition,

17  other than exhibits attached to the complaint or matters subject to judicial notice, "the court may

18  not consider matters outside the complaint." *Jacobson v. Schwarzenegger*, 357 F. Supp. 2d 1198,

19  1204 (C.D. Cal. 2004).

20  **B.**      **The Complaint States Viable Claims For Relief**

21      **1.**      **The Complaint States a Claim for Relief Under California Civil Code Section**

22           **3439.04(a)(1) (First Claim for Relief)**

23      The first claim for relief seeks to avoid the transfers to Defendant alleged in the Complaint

24  (the "Transfers") as fraudulent under section 3439.04(a)(1) of the California Civil Code.

25  Defendant attacks this claim on two grounds: (1) that Defendant's purported compliance with the

26  California Pawnbrokers Act and related provisions – namely, section 21628 of the California

27  Business and Professions Code – precludes avoidance of the debtor's transfer of the artwork as

28  collateral for the loans as a matter of law (Motion, 11:3-6); and (2) that "no more than merely

1  conclusionary allegations in violation of Federal Rule of Civil Procedure 8(a)(2) as to any hinder,

2  delay or defraud" is alleged in the Complaint (Motion, 11:16-17).  Both grounds fail.

3       **a.**     **Neither the Complaint Nor the Accompanying Exhibit Establishes**

4       **Defendant's Compliance With the California Pawnbrokers Act**

5       Defendant relies primarily on the contention that it "is in compliance with Cal. Bus. &

6  Prof. Code § 21628" to avoid liability.  Motion, 11:3-4.  Setting aside for now whether such

7  compliance could shield an initial transferee from the Bankruptcy Code's avoidance powers in any

8  event (it cannot, as discussed below), nothing that this Court may consider on a motion to dismiss

9  establishes that Defendant complied with the pawnbroker requirements in the first place.

10       As Defendant acknowledges, section 21628 of the California Business and Professions

11  Code only protects "a secondhand dealer [who] complies with ***all*** of the provisions of this

12  section."  Cal. Bus. & Prof. Code § 21628(h)(1) (emphasis added).  But neither the Complaint nor

13  the exhibit to the Complaint – which is Defendant's proof of claim that attaches the two loan

14  contracts – confirms Defendant's compliance with all of the provisions of that section.  Indeed, ***no***

15  ***less than five separate requirements*** of the referenced B&P Code section have ***not*** been satisfied:

16       •     Section 21628 requires that Defendant "report daily . . . on forms or through an

17  electronic reporting system approved by the Department of Justice, all secondhand tangible

18  personal property . . . which he or she has . . . taken in pawn . . . to the chief of police or to the

19  sheriff, in accordance with the provisions of Sections 21630 and 21633 and subdivision (j)" (Cal.

20  Bus. & Prof. Code § 21628).  Nothing in the Complaint or the exhibit evidences that Defendant

21  complied with this mandate.

22       •     Section 21628(b) provides that "[t]he identification of the seller or pledger of the

23  property shall be verified by the person taking the information" (*id.* § 21628(b)).  Nothing in the

24  Complaint or the exhibit evidences that Defendant complied with this mandate.

25       •     Section 21628(b) provides detailed requirements regarding the form of

26  identification of the seller or pledger that a pawnbroker must verify in order for such verification

27  to be valid.  *See id.*  Nothing in the Complaint or the exhibit establishes that Defendant satisfied

28  those requirements to make any such verification valid.  For example, nothing in the Complaint or

the exhibit evidences: (a) what form of identification Defendant viewed to verify the identification

of the seller or pledger (even if the identification was verified at all); (b) whether the identification

was "valid, or has been issued within five years;" (c) whether the identification "contains a

photograph or description, or both, of the person named on it" or if it "is signed by the person;" or

(d) whether the identification "bears a serial or other identifying number." *Id.* In fact, the exhibit

completely omits all the information regarding the form of the pledger's identification.

- Section 21628(e) requires "[a] certification by the intended seller or pledger that he

or she is the owner of the property or has the authority of the owner to sell or pledge the property."

Nothing in the Complaint or the exhibit evidences the presence of such certification and, in fact,

the signature block above such certifying language in the two loan contracts contains no signature.

- Section 21628(f) requires "[a] certification by the intended seller or pledger that to

his or her knowledge and belief the information is true and complete." Nothing in the Complaint

or the exhibit evidences the presence of such certification and, in fact, the signature block above

such certifying language in the two loan contracts contains no signature.

- Section 21628(g) requires "[a] legible fingerprint taken from the intended seller or

pledger, as prescribed by the Department of Justice." Nothing in the Complaint or the exhibit

evidences that Defendant obtained any fingerprint at all, let alone one that is "legible" or that

otherwise complies with the prescriptions of the Department of Justice.

In short, Defendant cannot rely upon any compliance with "all" of the requirements of the

Pawnbrokers Act to shield it from liability under the Complaint (even if such compliance is a

defense to the claims asserted in the Complaint).

**b.**  **California's Pawnbroker Regulations do Not Shield Defendant From the Bankruptcy Code's Avoidance Powers**

Relying exclusively on its purported compliance with the Pawnbrokers Act, Defendant

attacks the Complaint's first fraudulent transfer claim (and the other avoidance claims) by

asserting that "under state law and for all purposes against all claimants, BJI prevails and such

possessory lien pledge (transfer), and possession of collateral cannot be avoided nor collateral

taken." Motion, 11:3-7. Under Defendant's view, even if the debtor had every intent to defraud

1  its creditors through the transfer of assets to Defendant, including, but not limited to, making a

2  false certification regarding the authority to transfer the asset to Defendant, Defendant would be

3  completely shielded from any liability.  Defendant provides no support for this theory.  Defendant

4  is wrong.

5       First, that pawnbrokers and pawn transactions are heavily regulated does not remove them

6  from the scope of the estate's avoidance powers or immunize them from liability as a matter of

7  law as Defendant suggests.  As one court explained:

8         The mere fact that a transaction is governed by a comprehensive,
   even protective, statutory scheme is not sufficient by itself to take

9         transfers made pursuant to that scheme outside bankruptcy
   fraudulent transfer law.

10

                         * * * *

11

12         I conclude that the existence of a state statutory scheme, without
   more, does not insulate a pawn forfeiture transaction completed in
   compliance with that law from the possibility that it may be set aside

13         as a fraudulent transfer.

14  *Carter v. H & B Jewelry and Loan (In re Carter)*, 209 B.R. 732, 736, 737 (Bankr. D. Oregon

15  1997).  *See also*, *Geddes v. Mayhall Enterprises, LLC (In re Jones)*, 304 B.R. 462, 474 (Bankr.

16  N.D. Ala. 2003) (rejecting argument that pawnbroker may avoid application of fraudulent transfer

17  laws simply because most pawn transactions are made for less than full value of the asset

18  transferred).  Therefore, the notion that Defendant may have complied with the requirements for

19  pawn transactions does not mean the transfers are protected from avoidance if the elements of a

20  fraudulent transfer are met.

21       Second, nothing in the Pawnbrokers Act or California's Uniform Fraudulent Transfer Act

22  ("UFTA") excepts pawn transactions from the reach of the UFTA.  In fact, B&P Code section

23  21628 expressly limits the protection afforded to pawnbrokers that comply with its mandates only

24  "for all purposes included in ***this*** article, and ***Division 8*** (commencing with Section 21000) ***of the***

25  ***Financial Code***."  Cal. Bus. and Prof. Code § 21628(h)(1) (emphasis added).  The UFTA is in

26  Division 4 of California's Civil Code, commencing with section 3439.  It is neither in the same

27  "article" as B&P Code section 21628 (which is in Article 4 of Chapter 9 of Division 8 of the

28  Business and Professions Code) nor Division 8 of the Financial Code.

1    Defendant's periodic references to cases such as *Travelers Casualty & Surety Company of*

2  *America v. Pacific Gas and Electric Company*, 549 U.S. 443 (2007), for the notion that

3  "bankruptcy courts must consult state law in determining the validity of claims and liens"

4  (Motion, 10:24-27, 16:24-17:2), does not help Defendant.  For one thing, in this instance, even if

5  state law must be consulted, contrary to Defendant's claims, state law does *not* immunize

6  Defendant from liability.  To the contrary, state law *imposes* liability in these circumstances.  For

7  example, as discussed immediately above, Defendant is subject to fraudulent transfer liability

8  under California's UFTA and no exception or exemption from avoidance liability is included in

9  either the UFTA or the Pawnbrokers Act.

10    Moreover, *Travelers* expressly qualifies the application of state law when "some federal

11  interest requires a different result" and claims will not be allowed despite state law if "they are

12  expressly disallowed" under the Bankruptcy Code.  *Id.* at 451, 452.  Here, for instance, the

13  Bankruptcy Code: (1) expressly provides for avoidance and recovery of various forms of transfers,

14  including, but not limited to, under the circumstances alleged in the Complaint (*see, e.g.*, 11

15  U.S.C. §§ 544, 547, 548); and (2) expressly disallows claims of entities who received such

16  avoidable transfers, such as Defendant in this case (*see, e.g.*, 11 U.S.C. § 502(d)).  Therefore, even

17  though there is nothing to the contrary in state law, even if there were, Congress has expressly

18  provided for the avoidance and recovery of certain transfers, and disallowance of claims, in the

19  exact type of circumstances alleged in the Complaint.

20    Finally, compliance with all of the provisions of B&P Code section 21628 may, at best, go

21  to the "good faith" of the transferee-pawnbroker; it says nothing about the state of mind or intent

22  of the transferor-debtor.  Importantly, however, fraudulent transfer laws look to the ***debtor-***

23  ***transferor's*** intent in assessing whether a transfer was made with actual intent to hinder, delay, or

24  defraud.  *See, e.g.*, *McColley v. Rosenberg (In re Candor Diamond Corp.)*, 76 B.R. 342, 349, n.4

25  (Bankr. S.DN.Y. 1987) (explaining that transferee's "intent is irrelevant" for purposes of

26  fraudulent transfer and "what is critical is the debtor's intent").  And, in any event, as the ***initial***

27  transferee, Defendant is subject to strict liability with no good faith defense available to it at all.

28  *See* 11 U.S.C. § 550(b) (allowing good faith defense only to "immediate and mediate"

1  transferees); *Abele v. Modern Financial Plans Services, Inc. (In re Cohen)*, 300 F.3d 1097, 1102

2  (9th Cir. 2002) (a "trustee's right to recover from an initial transferee is absolute").

3       In sum, Defendant is subject to liability for avoidance (and recovery) of any fraudulent

4  transfers irrespective of its status as a pawnbroker or the nature of the transfers as having been

5  effectuated as part of a pawn transaction under California's Pawnbrokers Act.

6       **c.    The Complaint Alleges Sufficient Facts to Support a Claim for**

7            **Avoidance of a Fraudulent Transfer With Actual Intent to Defraud**

8       Section 3439.04(a)(1) of the California Civil Code provides:

9            A transfer made or obligation incurred by a debtor is fraudulent as to
10           a creditor, whether the creditor's claim arose before or after the
             transfer was made or the obligation was incurred, if the debtor made
             the transfer or incurred the obligation  as follows: (1) With actual
11           intent to hinder, delay or defraud any creditor of the debtor.

12  Cal. Civ. Code § 3439.04(a)(1).  Under this subsection, "a transfer is fraudulent if it is made 'with

13  actual intent to hinder, delay, or defraud' any creditor of the transferor."  *United States v. 5208 Los*

14  *Franciscos Way*, 385 F.3d 1187, 1191 (9th Cir. 2004) (citing Cal. Civ. Code § 3439.04(a)).

15      Subsection (b) identifies various factors courts consider in determining the presence of

16  actual intent for purposes of section 3439.04(a)(1).  *See* Cal. Civ. Code § 3439.04(b).  *See also*,

17  *5208 Los Franciscos*, 385 F.3d at 1191, n. 4 (explaining that presence of "badges of fraud" listed

18  in section 3439.04 "constitute evidence from which an inference of fraudulent intent may be

19  drawn").  "There is no minimum number of factors that must be present before the scales tip in

20  favor of finding actual intent to defraud."  *See Still v. Arakelyan (In re Still)*, 393 B.R. 896, 917

21  (Bankr. C.D. Cal. 2008) (quoting *Filip v. Bucurenciu*, 129 Cal. App. 4th 825, 834 (2005)).

22      In a single sentence, without any explanation or support, Defendant makes the generic

23  assertion that the Complaint contains "no more than merely conclusionary allegations in violation

24  of Federal Rule of Civil Procedure 8(a)(2) as to any hinder, delay or defraud [sic]."  Motion,

25  11:16-17.  Quite the contrary -- all of the essential allegations are pled or incorporated by

26  reference into this claim for relief.  Among other things, the Complaint alleges that:

27      •    Defendant made two loans to Chrismas, and not the debtor (Complaint, ¶¶ 7, 9);

28

- Within the applicable reachback periods, in exchange for the two loans, the debtor transferred to Defendant: (a) various pieces of art belonging to the debtor; (b) a security interest in collateral owned by the debtor; and (c) the debtor's funds to pay down the loans (Complaint, ¶¶ 8, 10, 12, 13);

- In exchange for the Transfers, Defendant did not provide to the debtor, and the debtor did not receive, any consideration or value (as the loans were to Chrismas) (Complaint, ¶¶ 14, 20.d);

- The debtor's bankruptcy schedules indicate that the debtor's liabilities vastly exceeded the value of its assets and that certain of those liabilities and claims filed in this case were present at or about the time of the Transfers (Complaint, ¶ 17);

- Chrismas is an insider of the debtor (Complaint, ¶ 20.a);

- Each of the Transfers was made for the benefit of Chrismas as they related to the two loans made to Chrismas (Complaint, ¶¶ 7, 9, 8, 10, 12, 13, 20.b);

- The debtor had been sued or threatened with suit before one or more of the Transfers (Complaint, ¶ 20.c);

- The debtor was insolvent or not paying its debts as they came due at the time of the Transfers (Complaint, ¶¶ 17, 20.e);

- The Transfers occurred shortly before or after the debtor incurred substantial debt (Complaint, ¶ 20.f); and

- The debtor made the Transfers with full knowledge that the loans were being made to Chrismas (Complaint, ¶ 20.g).

With these and other allegations in the Complaint, Plaintiff states a claim for relief for the avoidance of a fraudulent transfer with actual intent to hinder, delay, or defraud under California Civil Code section 3439.04(a)(1).

## 2. __The Complaint States a Claim for Relief Under California Civil Code Section 3439.04(a)(2) (Second Claim for Relief)__

The second claim for relief seeks to avoid the Transfers as fraudulent under section 3439.04(a)(2) of the California Civil Code. That section allows for avoidance of a transfer made

1    by a debtor "[w]ithout receiving a reasonably equivalent value in exchange" for the transfer.  *Id.*

2         Defendant attacks this claim on the sole purported ground that "the nature of a pawn

3    transaction . . . exempts them from such a challenge of reasonably equivalent value as a matter of

4    law" and, in turn, pawn transactions are "deemed in good faith even though a debtor received far

5    less than reasonably equivalent value[.]"  Motion, 11:23-26.  This is incorrect.

6         As discussed above, no authority exists to remove pawn transactions from the reach of

7    fraudulent transfers.  Moreover, contrary to Defendant's description of the law, courts consistently

8    hold that pawn transactions are subject to avoidance if there was no exchange of reasonably

9    equivalent value and that a pawn transaction cannot escape avoidance if "a debtor received far less

10   than reasonably equivalent value" as Defendant asserts.

11        Defendant cites *Geddes v. Mayhall Enterprises, LLC (In re Jones)*, 304 B.R. 462 (Bankr.

12   N.D. Ala. 2003), to support its theory.  But *Jones* says the exact opposite – that the nature of pawn

13   transactions does ***not*** exempt them from avoidance for involving an exchange of less than

14   reasonably equivalent value:

15        Mayhall [defendant] argues that title pawn transfers will almost
          always be for less than the full value of the vehicle due to the nature

16        of the transaction.  ***A pawnbroker cannot avoid the application of §
          548(a)(1)(B) simply because most pawn transactions are made for
     
17        less than the full value of the vehicle.  The court must still inquire
          whether the transfer was made for less than reasonably equivalent

18        value in exchange.***

19   *Id.* at 474-75 (emphasis added) (concluding "that the trustee has established the last element" of a

20   constructively fraudulent transfer under a pawn transaction because "[t]he debtor received less

21   than reasonably equivalent value in exchange for the transfer").  *See also*, *Carter*, 209 B.R. at 735-

22   37 (declining to hold that a transfer under a pawn transaction is conclusively one made for

23   reasonably equivalent value); *Bell v. Instant Care Title Loans (In re Bell)*, 279 B.R. 890 (Bankr.

24   N.D. Ga. 2002) (noting that transfer of a vehicle under a pawn transaction was not for reasonably

25   equivalent value).  Therefore, the Transfers are subject to avoidance as constructively fraudulent

26   transfers despite being made in the context of pawn transactions.

27        Although Defendant does not contend otherwise, the Complaint alleges sufficient facts to

28   establish that the debtor made the Transfers without receiving ***any*** – let alone reasonably

1    equivalent – value in exchange.  Among other things, as noted above, the Complaint alleges that

2    whereas the debtor made the Transfers, the pawn loans were made to and for the benefit of

3    Chrismas, and, in any event, the loans totaled only $300,000, whereas the Transfers exceeded

4    $400,000 (a fact Defendant concedes).  *See* Complaint, ¶¶ 7-15; Motion, 12:2-5.

5         Based on the foregoing, the Complaint states a claim for relief for a constructively

6    fraudulent transfer under Civil Code section 3439.04(a)(2).

7         **3.    The Complaint States a Claim for Relief Under California Civil Code Section**

8              **3439.05 (Third Claim for Relief)**

9         The third claim for relief seeks to avoid the Transfers as fraudulent under section 3439.05

10   of the California Civil Code.  That section also allows for avoidance of a transfer made by a debtor

11   "[w]ithout receiving a reasonably equivalent value in exchange" for the transfer and which was

12   insolvent at the time, or became insolvent as a result, of such transfer.  *Id.*

13        In seeking dismissal of this claim, Defendant advances the same flawed rationale it used

14   against the second claim for relief discussed immediately above; to wit, citing *Jones* for the

15   proposition that "the pawn transaction described herein is clearly an arms length and in good faith

16   eliminating reasonably equivalent value as a pawn pledge may receive less than reasonably

17   equivalent value as a matter of law."  Motion, 12:15-18.  As discussed above, Defendant

18   mischaracterizes *Jones*, and for all the same reasons set forth above in respect of the second claim

19   for relief, Defendant's arguments for dismissal of this third claim for relief lacks merit.

20        **4.    The Complaint States a Claim for Relief Under Bankruptcy Code Section**

21             **548(a)(1)(A) (Fourth Claim for Relief)**

22        The fourth claim for relief seeks to avoid the Transfers as fraudulent under section

23   548(a)(1)(A) of the Bankruptcy Code.  Like the first claim for relief under California Civil Code

24   section 3439.04(a)(1), that section allows for avoidance of a transfer made with actual intent to

25   hinder, delay, or defraud.  *See* 11 U.S.C. § 548(a)(1)(A).

26        Defendant criticizes this claim for relief on the alleged grounds that the Complaint includes

27   "no more than merely conclusionary allegations in violation of Federal Rule of Civil Procedure

28   8(a)(2) as to any hinder, delay or defraud;" in other words, Defendant relies on the same generic,

1   unsupported claim it asserted against the first claim for relief.

2       For all the same reasons discussed above in regard to the first claim for relief, Defendant's

3   argument fails.  The fourth claim for relief includes all essential facts to support a claim for

4   fraudulent transfer with actual intent, whether by direct allegations within this claim for relief or

5   by incorporating by reference previous allegations in the Complaint.  *See, e.g.*, *Neilsen v. Union*

6   *Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1143-44 (C.D. Cal. 2003) (refusing to dismiss

7   claim for relief because the claim "clearly incorporates the earlier factual allegations" and, in turn,

8   states a claim for relief).

9       **5.    The Complaint States a Claim for Relief Under Bankruptcy Code Section**

10      **548(a)(1)(B) (Fifth Claim for Relief)**

11      The fifth claim for relief seeks to avoid the Transfers as fraudulent under section

12  548(a)(1)(B) of the Bankruptcy Code.  Like the second and third claims for relief under the

13  California Civil Code, this section permits avoidance of a transfer made for less than reasonably

14  equivalent value.  Defendant again cites *Jones* and relies on the incorrect notion that pawn

15  transactions are exempt from any reasonably equivalent value element.  For all the reasons

16  discussed above in respect of the second and third claims for relief, Defendant's request to dismiss

17  this fifth claim for relief must be overruled.

18      **6.    The Complaint States a Claim for Relief Under Bankruptcy Code Section 547**

19      **(Sixth Claim for Relief)**

20      The sixth claim for relief seeks to avoid the Transfers as preferential under section 547 of

21  the Bankruptcy Code.  Defendant asserts that Plaintiff does not state a claim for relief because the

22  Transfers were not made on account of an antecedent debt.  Particularly, Defendant contends that:

23  (1) as for the transfers of the collateral for the pawn loans, they were "made at the time of the

24  pawn transaction;" and (2) as for the subsequent payments alleged in the Complaint, they were

25  "only made to extend or forbear foreclosure on the pawn transaction" and "not so allocated to

26  antecedent debt."  Motion, 13:24-14:9.  These issues cannot be resolved on a motion to dismiss.

27      First, whether or not a transfer was on account of an antecedent debt requires a

28  determination of when the debt arose and when the transfer occurred.  *See, e.g.*, *Dickinson v.*

1  *Meredith (In re Wathen's Elevators, Inc.)*, 37 B.R. 871-72 (Bankr. W.D. Ky. 1984).  *See also*, *In*

2  *re Gulino*, 779 F.2d 546, 551-52 (9th Cir. 1985) (holding that whether debt is antecedent requires

3  determination of when transfer is perfected and if transfer "had been effectively delayed . . . the

4  delayed transfer . . . would have been on account of an antecedent debt").  In other words, these

5  are issues that are not properly determined on a motion to dismiss as Defendant necessarily would

6  need to provide facts outside the materials that may be considered on the Motion to support the

7  contention that there was no antecedent debt.  *See, e.g.*, *BC Liquidating, LLC v. Sharf (In re BC*

8  *Funding, LLC)*, 2014 Bankr. LEXIS 4880, * 15-16 (denying motion to dismiss preference claim

9  based on defendant's assertion that complaint does not allege an antecedent debt and concluding

10  that such issues are more "properly raised at trial").

11      Second, nothing in the Complaint or the exhibit to the Complaint alleges or supports

12  Defendant's claim that the payment transfers alleged in the Complaint were "only made to extend

13  or forbear foreclosure on the pawn transaction."  This, too, falls outside the material that this Court

14  may consider on a Rule 12(b)(6) motion.  As the Complaint alleges now, those payments were

15  made on account of the loans and, as a result, were on account of the earlier, antecedent debt (to

16  the extent the loans were made to the debtor).  *See* Complaint, ¶¶ 13, 41.

17      **7.    The Complaint States a Claim for Relief Under Bankruptcy Code Section 550**

18          **(Seventh Claim for Relief)**

19      The seventh claim for relief simply seeks the recovery of the Transfers to the extent

20  avoided as fraudulent or preferential transfers under the earlier claims for relief in the Complaint.

21  Defendant points to its arguments for dismissal of the avoidance claims in contending that

22  Plaintiff does not state a claim for relief for recovery because "there is no possible avoidance

23  under the proposed theories."  Motion, 14:22-23.  For all the reasons discussed above in respect of

24  the various avoidance claims, however, the Complaint states claims for relief for avoidance of the

25  Transfers.  As a result, the Complaint states a claim for relief for the recovery of such Transfers

26  (or their value) under section 550 of the Bankruptcy Code.

27

28

**8.**      **The Complaint States a Claim for Relief Under Bankruptcy Code Section**

**506(d) (Eighth Claim for Relief)**

The eighth claim for relief seeks an order finding that Defendant's alleged security interest in the collateral is void under section 506(d) of the Bankruptcy Code. That section provides, with exceptions not applicable here, that "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void[.]" 11 U.S.C. § 506(d). The Complaint alleges a claim for relief under section 506(d).

Defendant asserts that the section 506(d) claim must be dismissed because Defendant's $300,000 claim is secured by the $400,000 worth of collateral. Motion, 15:1-2. Defendant completely misses the mark. The critical fact is whether the claim against the debtor that the lien purports to secure is an allowed secured claim. In this case, as alleged in the Complaint, it is not for at least two reasons.

First, as alleged in the Complaint, the loans were not made to the debtor and the debtor is not a signatory to the loan contracts or otherwise obligated on the loan. Therefore, Defendant has no claim at against the debtor. Put another way, Defendant's asserted claim against the debtor should not be allowed and, as a result, the lien purports to secure a claim that should not be an allowed secured claim against the debtor.

Second, the Complaint includes a claim for relief seeking disallowance of Defendant's claim. To the extent sustained, Defendant would not have an allowed claim against the debtor and, in turn, its lien should be found void under section 506(d).

**9.**      **The Complaint States a Claim for Relief Under Bankruptcy Code Section 551**

**(Ninth Claim for Relief)**

The ninth claim for relief seeks preservation of the Transfers to the extent avoided under the earlier claims for relief in the Complaint. Defendant points back to its arguments for dismissal of the avoidance claims in contending that Plaintiff does not state a claim for relief for preservation of the avoided transfers because "there is no possible avoidance under the proposed theories." Motion, 15:22-24. For all the reasons discussed above in respect of the various avoidance claims, however, the Complaint states claims for relief for avoidance of the Transfers.

13

1   As a result, the Complaint states a claim for relief for the preservation of such Transfers for the

2   benefit of the estate under section 551 of the Bankruptcy Code.

3       **10.    The Complaint States a Claim for Relief Under Bankruptcy Code Section**

4           **542(a) (Tenth Claim for Relief)**

5           The tenth claim for relief seeks turnover of the property transferred to Defendant under

6   section 542(a) of the Bankruptcy Code.  That section provides, in relevant part, that:

7           an entity . . . in possession, custody, or control, during the case, of
            property that the trustee may use, sell, or lease under section 363 of
8           this title . . . shall deliver to the trustee, and account for, such
            property or the value of such property, unless such property is of
9           inconsequential value or benefit to the estate.

10  11 U.S.C. § 542(a).  The Complaint alleges all facts necessary to state a claim for relief under this

11  section to require Defendant's turnover of the transferred property.

12          The Complaint alleges that: (1) the artwork transferred to Defendant, and the funds used to

13  make payments to Defendant, are property of the estate pursuant to 11 U.S.C. § 541 (*see, e.g.*,

14  Complaint, ¶¶ 8, 10, 13, 55, 56); (2) Defendant currently is in possession, custody, or control of all

15  the property transferred (*see* Complaint, ¶¶ 8, 10, 56); and (3) the property transferred has

16  substantial value (*see* Complaint, ¶¶ 11 (alleging artwork valued at no less than $400,000), 13

17  (alleging payments made in the amount of no less than $58,000), 56 (alleging that transferred

18  property is not of inconsequential value)).  Defendant admits each of these facts.  *See, e.g.*,

19  Motion, 6:9-11 (stating that "the collateral [for the loans] is property of the estate"), 6:26-28 ("BJI

20  has control and possession of the collateral artwork"); Exhibit 1 to Complaint (Defendant's proof

21  of claim), p. 1 (admitting to possession of artwork and valuing artwork at no less than $400,000).

22          Despite the foregoing, Defendant nevertheless asserts that the Complaint does not state a

23  proper claim for relief under section 542(a) on the sole ground that the property Defendant admits

24  is property of the estate and admits it currently possesses is of inconsequential value.  *See* Motion,

25  16:6-7.  Defendant bases this assertion on the allegation that "the Committee never contemplated

26  the use of the BJI collateral until after confirmation" and that the amount of Defendant's claim on

27  account of the pawn loans exceeds the $400,000 value of the collateral.

28          Nothing in the Complaint or other material considered on a motion to dismiss supports

1  Defendant's conjecture that the Committee never contemplated use of the collateral until after

2  confirmation.  But even if true, this does not defeat this claim for relief.  What the Committee

3  intended or intends to do with the property is completely irrelevant to this claim for relief because:

4  (1) the Committee is prosecuting this entire action and seeking turnover of the property on behalf

5  of the estate, not on its own behalf; and (2) the intended or contemplated use of the property is not

6  an element of the claim – section 542(a) compels turnover of any property that the estate simply is

7  *permitted* to use, sell, or lease (*see* 11 U.S.C. § 542(a) (compelling turnover of any property the

8  debtor "*may* use, sell, or lease under section 363 of this title") (emphasis added)).

9        Furthermore, as discussed above, Defendant's claim against the debtor and lien against the

10  artwork is not valid and, in turn, the artwork may not be used to satisfy Defendant's loans.  And

11  even if Defendant's claim is valid against the debtor, turnover is required despite whatever lien

12  Defendant may assert against the property.  *See United States v. Whiting Pools, Inc.*, 462 U.S. 198,

13  204-06 (1983) (construing section 542 to compel turnover even if secured creditor possessed

14  property before bankruptcy petition filed); *Dewhirst v. Citibank (Arizona) (In re Contractors*

15  *Equipment Supply Co.)*, 861 F.2d 241 (9th Cir. 1988) ("The property of the debtor's estate

16  includes property in which a creditor has a security interest").

17        Finally, section 542's turnover requirement is self-effectuating upon the filing of the

18  bankruptcy petition.  *See APJL Consulting, LLC v. Treasures, Inc. (In re Treasures, Inc.)*, 2015

19  Bankr. LEXIS 662, *59 (B.A.P. 9th Cir. Mar. 3, 2015) ("By its express terms, § 542(a) is self-

20  executing and does not require the debtor to take any action or commenced a proceeding or obtain

21  a court order to compel turnover") (citing *Mwangi v. Wells Fargo Bank, N.A. (In re Mwangi)*, 432

22  B.R. 812, 823 (B.A.P. 9th Cir. 2010)); *Siegfried v. Board (In re Seigfried)*, 2014 Bankr. LEXIS

23  5092, *6-7 (Bankr. D.N.M. Dec. 19, 2014) (holding entity was required to turnover garnished

24  funds "without prompting" and "[n]o Court was required; § 542(a) is self-executing and requires

25  turnover").  Defendant's continuing retention of the collateral for more than two years since this

26  bankruptcy case was filed is a violation of section 542.  For Defendant to now contend that the

27  value of the collateral has become inconsequential (even if true) given the increase in the amount

28  of its claim over the past two years is, at best, wholly disingenuous, and should be flatly rejected.

**11.**     **The Complaint States a Claim for Relief Under Bankruptcy Code Section 542(b) (Eleventh Claim for Relief)**

The eleventh claim for relief seeks turnover of property under section 542(b) of the Bankruptcy Code.  Defendant seeks dismissal of this claim on the grounds that "[t]here are no more than merely conclusionary allegations" and pawn collateral is not subject to turnover. Motion, 16:12-18.  Defendant's objection to this claim for relief should be overruled.

First, Defendant fails to recognize that the eleventh claim for relief incorporates by reference all of the previous allegations in paragraphs 1 through 53 of the Complaint.  Those allegations properly state a claim for relief for turnover of property.

Second, for all the reasons discussed above in connection with the first claim for relief, nothing about the Pawnbrokers Act or the regulations governing pawnbrokers exempts pawn transactions from the Bankruptcy Code's avoidance or turnover provisions.

**12.**     **The Complaint States a Claim for Relief for Disallowance of Defendant's Claim (Twelfth Claim for Relief)**

The twelfth claim for relief seeks disallowance of Defendant's claim filed against the estate under section 502(d) of the Bankruptcy Code.  That section provides:

> Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section . . . 544, 547, [or] 548 . . . of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section . . . 550 . . . of this title.

11 U.S.C. § 502(d).  For all the reasons set forth above and as alleged in the Complaint, Defendant is an "entity from which property is recoverable under section 542 [and] 550" and is "a transferee of a transfer avoidable under section . . . 544, 547 [and] 548" and, to date, Defendant has not paid or turned over such property.

Defendant again asserts that a claim for relief is not stated because its alleged lien is not avoidable.  This is wrong as addressed in connection with the first claim for relief.  Defendant's

16

1    objection, therefore, should be overruled.[2]

2        **13.    The Complaint States a Claim for Relief for Declaratory Relief (Thirteenth**

3            **Claim for Relief)**

4        The final claim for relief simply seeks a judicial declaration regarding issues relating to the

5    validity of Defendant's asserted lien and right to retain the transferred property.  The Complaint

6    alleges that a dispute exists between Plaintiff and Defendant regarding such matters.  Indeed, all of

7    the arguments in Defendant's instant motion to dismiss confirm that such disputes exist.

8        Defendant's statements against this claim for relief in the Motion are somewhat

9    unintelligible (and Defendant appears to argue the merits of its lien on all the same mistaken

10    grounds discussed above).  But one thing is clear:  Defendant does ***not*** dispute the fact that a live

11    controversy exists between the parties surrounding Defendant's alleged lien and rights to the

12    collateral and related matters, and that, under such circumstances, a request for a judicial

13    declaration is appropriate.  As a result, this thirteenth claim for relief is valid.

14    **C.    Plaintiff has Standing to Prosecute This Action**

15        Defendant asserts that Plaintiff does not have standing to prosecute this action.  This Court

16    already adjudicated this objection in favor of Plaintiff.  Specifically, on March 9, 2015 (after

17    Defendant filed the Motion), based on a relatively extensive memorandum decision, this Court

18    entered an order approving the stipulation between the debtor and the Committee that confers

19    standing on the Committee to prosecute this action for the benefit and on behalf of the estate,

20    effective as of February 18, 2015 (the date the Complaint was filed).  *See* Dkt. No. 949.

21    Therefore, Defendant's contention that Plaintiff lacks standing fails.

22

23

24    _____

25    [2] Defendant cites *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450 (2007),
seemingly for the proposition that, under section 502(b), a claim cannot be disallowed unless it is not

26    enforceable under state law and there are no grounds under state law to disallow the claim.  First, as
indicated above, section 502(d) applies "notwithstanding subsections (a) and (b)."  11 U.S.C. § 502(d)

27    Second, grounds exist under state law to disallow Defendant's claim for repayment of the loans because, on
the face of the loan contracts, the debtor is not the borrower.

28

**III.**

**PLAINTIFF SHOULD BE PERMITTED TO AMEND THE COMPLAINT IF THE COURT FINDS THAT ANY CLAIM FOR RELIEF IS NOT ADEQUATELY PLEADED**

As discussed above, Plaintiff believes each of the claims for relief in the Complaint has been adequately alleged and does not believe the Motion has any merit.  In the event the Court determines that any claim for relief has not been sufficiently pled, Plaintiff requests that the Court grant Plaintiff leave to amend the Complaint to correct any pleading deficiency.

Federal Rule of Bankruptcy Procedure 7015(a)(2) provides that a court "should freely give leave [to amend a complaint] when justice so requires."  Fed. R. Bankr. P. 7015(a)(2).  The rule should be interpreted with "extreme liberality."  *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981).

Whether leave to amend should be granted is generally determined by considering the following factors: (1) undue delay; (2) bad faith; (3) futility of amendment; and (4) prejudice to the opposing party.  *See Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798 (9th Cir. 1991).  Prejudice to the opposing party is the most important factor.  *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330-31 (1971).

Defendant would not be prejudiced by any amended complaint as this action is still at its initial stages, with no answer on file, with the case not yet at issue, and with no discovery having been conducted yet.  Moreover, by virtue of the Complaint and the clear allegations in the Complaint, Defendant is fully aware of the claims asserted and the transactions upon which the Complaint is based.

Therefore, to the extent the Court believes any claim for relief was not properly pleaded, this Court should afford Plaintiff an opportunity to file an amended complaint.

/ / /

/ / /

/ / /

/ / /

/ / /

1

## IV.

2

## CONCLUSION

3      Based on the foregoing, the Motion should be denied.  In the event the Court believes any

4  claim for relief has not been sufficiently pled, this Court should grant Plaintiff leave to file an

5  amended complaint.

6  Dated: April 14, 2015                  **Sulmeyer**Kupetz
                                          A Professional Corporation
7

8

9                                         By:   */s/ Asa S. Hami*
                                                Asa S. Hami
10                                              Attorneys for Plaintiff
                                                Official Committee of Unsecured Creditors
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Hope Street, Thirty-Fifth Floor, Los Angeles, CA 90071-1406.

A true and correct copy of the foregoing document entitled (*specify*):  **OPPOSITION OF PLAINTIFF TO "MOTION BY DEFENDANT BEN JEWELRY, INC. TO DISMISS COMPLAINT FILED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS PURSUANT TO FRCivP RULE 12(b)"**  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)  April 14, 2015  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Michael F Frank on behalf of Defendant Ben Jewelry, Inc. - mfrankatty@aol.com
- Asa S Hami on behalf of Plaintiff Official Committee of Unsecured Creditors - ahami@sulmeyerlaw.com, agonzalez@sulmeyerlaw.com;agonzalez@ecf.inforuptcy.com;ahami@ecf.inforuptcy.com
- Daniel A Lev on behalf of Interested Party Courtesy NEF - dlev@sulmeyerlaw.com, asokolowski@sulmeyerlaw.com; dlev@ecf.inforuptcy.com; dwalker@sulmeyerlaw.com
- David J Richardson on behalf of Interested Party Courtesy NEF - drichardson@sulmeyerlaw.com, drichardson@ecf.inforuptcy.com
- Victor A Sahn on behalf of Plaintiff Official Committee of Unsecured Creditors - vsahn@sulmeyerlaw.com, agonzalez@sulmeyerlaw.com, agonzalez@ecf.inforuptcy.com; asokolowski@sulmeyerlaw.com; vsahn@ecf.inforuptcy.com
- United States Trustee (LA) - ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*)  April 14, 2015 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Honorable Robert Kwan
U.S. Bankruptcy Court
Roybal Federal Building
255 E. Temple Street, Suite 1682
Los Angeles, CA 90012

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 14, 2015 | Andrea Gonzalez | /s/ Andrea Gonzalez |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                           **F 9013-3.1.PROOF.SERVICE**